**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MICHELLE BRYANT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:20-cv-979-CWB** |
| | ) | |
| **KILOLO KIJAKAZI,[1]** | ) | |
| **Acting Commissioner of** | ) | |
| **Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

**I.     Introduction and Administrative Proceedings**

Michelle Louise Bryant ("Plaintiff") filed an application for Disability Insurance Benefits under Title II of the Social Security Act and an application for Supplemental Security Income under Title XVI of the Social Security Act on April 23, 2019 wherein she alleged disability onset of March 5, 2019 due to fractured right knee and fractured left hip replacement.  (Tr. 15, 84-85, 95-96, 106, 108).[2]  Plaintiff's claims were denied at the initial level on June 24, 2019 (Tr. 15, 110, 115), and Plaintiff requested *de novo* review by an administrative law judge ("ALJ") (Tr. 15, 122, 124).  The ALJ subsequently heard the case on May 13, 2020, at which time testimony was given by Plaintiff (Tr. 15, 29-51, 53-54) and by a vocational expert (Tr. 51-59).  The ALJ took the matter under advisement and issued a written decision on June 3, 2020 that found Plaintiff not disabled. (Tr. 15-23).  The ALJ's written decision contained the following enumerated findings:

---

[1] Kilolo Kijakazi became Acting Commissioner for the Social Security Administration on July 9, 2021 and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

[2] References to pages in the transcript are denoted by the abbreviation "Tr."

1.  The claimant meets the insured status requirements of the Social Security Act through March 31, 2024 (Exhibit 10D).

2.  The claimant has not engaged in substantial gainful activity since March 5, 2019, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.  The claimant has the following severe impairment: status post fractures of bilateral lower extremities (20 CFR 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with the following limitations. The claimant must be given the opportunity to stand up to 30 minutes, after sitting for 2 hours continuously. The claimant is further limited to no more than occasional balancing, stooping, kneeling, crouching, and climbing on ramps and stairs, but may never crawl or climb on ladders, ropes, or scaffolds. The claimant must avoid unprotected heights and dangerous moving machinery. The claimant needs to be able to utilize a cane for ambulation.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born on February 2, 1996 and was 23 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 5, 2019, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 17, 18, 21, 22, 23).

On October 8, 2020, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-5), thereby rendering the ALJ's decision the final decision of the Commissioner. *See, e.g., Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

On appeal, Plaintiff asks the court to reverse the final decision and to remand the case for a new hearing and further consideration.  (Doc. 16 at pp. 14-15).  As contemplated by 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to entry of final judgment by a United States Magistrate Judge (Docs. 9 & 10), and the undersigned finds that the case is now ripe for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  Upon consideration of the parties' submissions, the relevant law, and the record as a whole, the court concludes that the final decision is due to be AFFIRMED.

## II.    Standard of Review and Regulatory Framework

The court's review of the Commissioner's decision is a limited one.  Assuming the proper legal standards were applied by the ALJ, the court is required to treat the ALJ's findings of fact as conclusive so long as they are supported by substantial evidence.  42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla," but less than a preponderance, "and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence.") (citations omitted).  The court thus may reverse the ALJ's decision only if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied.  *See Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  Reversal is not warranted

3

simply because the court itself would have reached a result contrary to that of the factfinder.  *See*
*Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).  Despite the deferential nature of its
review, however, the court must look beyond those parts of the record that support the decision,
must view the record in its entirety, and must take account of evidence that detracts from the
evidence relied on in the decision.  *See Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986);
*see also Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

To qualify for disability benefits and establish entitlement for a period of disability, a
person must be unable to:

> engage in any substantial gainful activity by reason of any medically determinable
> physical or mental impairment which can be expected to result in death or which
> has lasted or can be expected to last for a continuous period of not less than 12
> months.

42 U.S.C. § 423(d)(1)(A).[3]  To make such a determination, the ALJ employs a five-step sequential
evaluation process.  *See* 20 C.F.R. §§ 404.1520 & 416.920.

(1) Is the person presently unemployed?

(2) Is the person's impairment severe?

(3) Does the person's impairment meet or equal one of the specific impairments set
forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?

(4) Is the person unable to perform his or her former occupation?

(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the above questions leads either to the next
question, or, on steps three and five, to a finding of disability.  A negative answer
to any question, other than step three, leads to a determination of "not disabled."

---

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or
psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory
diagnostic techniques.  42 U.S.C. § 423(d)(3).

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

The burden of proof rests on the claimant through step four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). A claimant establishes a *prima facie* case of a qualifying disability once he or she has carried the burden of proof from step one through step four. *Id*. At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform. *Id*.

In order to assess the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Phillips*, 357 F.3d at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id*. It may contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy that the claimant can perform. *Id*. at 1239. To do so, the ALJ can use either the Medical Vocational Guidelines ("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert ("VE"). *Id*. at 1239-40. The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual, and combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*. at 1240.

---

[4] *McDaniel* is an SSI case. Nonetheless, the same sequence applies to claims for disability insurance benefits brought under Title II. SSI cases arising under Title XVI therefore are appropriately cited as authority in Title II cases, and vice versa. *See, e.g., Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

### III.     Issues on Appeal

Plaintiff raises two issues on appeal: (1) whether the ALJ properly considered Plaintiff's left femoral neck fracture under Listing 1.06; and (2) whether the ALJ improperly evaluated Plaintiff's credibility.  (Doc. 16 at p. 1).

### IV.     Discussion

#### A.     The ALJ's Evaluation of Listing 1.06

A claimant bears the burden of proving that his or her impairments met or equaled a listing. *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991).  "To 'meet' a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement.  To 'equal' a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'" *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (internal citation omitted); *see* 20 C.F.R. § 404.1525(a)-(d); 20 C.F.R. § 404.1526(a).  The duration requirement means that the impairment "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509.  "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original); 20 C.F.R. §§ 404.1525(d), 416.925(d) (A claimant's "impairment(s) cannot meet the criteria of a listing based only on a diagnosis. To meet the requirements of a listing, [a claimant] must have a medically determinable impairment(s) that satisfies all of the criteria in the listing.").

"For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment."  *Id*. at 531

(emphasis in original). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Id*.

A claimant who is not currently engaging in substantial gainful activity and who has a severe impairment which meets or equals a listing is entitled to disability benefits, and the sequential evaluation of a claim ends. *Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984). "The ALJ's finding as to whether a claimant meets a listed impairment may be implied from the record. Furthermore, while the ALJ must consider the Listings in making its disability determination, 'it is not required that the [ALJ] mechanically recite the evidence leading to [its] determination.'" *Kalishek v. Comm'r of Soc. Sec.*, 470 F. App'x 868, 870 (11th Cir. 2012) (quoting *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir.1986)).

In finding that Plaintiff did "not have an impairment or combination of impairments that [met] or medically equal[ed] the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1," the ALJ explained that no treating or examining physician mentioned findings equivalent in severity to the criteria of any listed impairment, that the evidence did not show medical findings that were the same or equivalent to those of any listed impairment, and that the State agency medical consultant also reviewed the record and concluded that no listing was met or equaled. (Tr. 18). As to listing 1.06, the ALJ stated that the records reflected that Plaintiff was ambulating without assistive devices by June 2019 and that she thereafter continued to have a limp. (Tr. 18). The ALJ also noted that, even though the record reflected that in March 2020 Plaintiff was utilizing a one-handed cane, such use did not meet the definition of an inability to ambulate as described in Listing 1.00B2b. (Tr. 18, 1050, 1074).

Listing 1.06 states:

Fracture of the femur, tibia, pelvis, or one or more of the tarsal bones. With:

A.  Solid union not evident on appropriate medically acceptable imaging and not clinically solid;

and

B. Inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur or is not expected to occur within 12 months of onset.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.06.  The "inability to ambulate effectively" is described as follows:

b. What We Mean by Inability To Ambulate Effectively

(1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)

(2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.00B2b(1)-(2).[5]

---

[5] The regulations describe hand-held assistive devices as follows:
    Hand-held assistive devices. When an individual with an impairment involving a
    lower extremity or extremities uses a hand-held assistive device, such as a cane,

In arguing that the ALJ failed to properly evaluate whether Plaintiff met Listing 1.06, Plaintiff asserts that she presented evidence establishing that she met the criteria for A and B, that the ALJ erred in failing to adopt Dr. Stephen Becher's statement that Plaintiff was unable to ambulate effectively, and that the ALJ failed to consider Plaintiff's examples of an inability to ambulate effectively.  (Doc. 17 at pp. 7-10).  The Commissioner concedes that Plaintiff met the criteria for Part A for Listing 1.06, as the ALJ noted that imaging suggested a possibility of an incomplete union of the left hip, but contends that substantial evidence supported the ALJ's determination regarding whether Plaintiff was unable to ambulate effectively, as well as the ALJ's finding that Dr. Becher's opinion was not persuasive.  (Doc. 17 at pp. 6-8).

Here, the ALJ thoroughly discussed the medical record in properly determining that Plaintiff did not meet Listing 1.06B.  The ALJ stated that Plaintiff sustained a left femoral neck fracture and a right femoral shaft fracture in a motor vehicle accident in March 2019, that she underwent surgery as a result, and that she was discharged from the hospital on March 11, 2019. (Tr. 19, 695, 701, 805-06, 944).  The ALJ noted: that following Plaintiff's release from the hospital she was non-weight bearing with the left lower extremity and weight bearing as tolerated with the right lower extremity; that on April 9, 2019, her status was changed to touch toe weight bearing with the left lower extremity; and that on May 21, 2019, her status was upgraded to weight bearing

---

crutch or walker, examination should be with and without the use of the assistive device unless contraindicated by the medical judgment of a physician who has treated or examined the individual. The individual's ability to ambulate with and without the device provides information as to whether, or the extent to which, the individual is able to ambulate without assistance. The medical basis for the use of any assistive device (e.g., instability, weakness) should be documented. The requirement to use a hand-held assistive device may also impact on the individual's functional capacity by virtue of the fact that one or both upper extremities are not available for such activities as lifting, carrying, pushing, and pulling.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.00J4.

as tolerated.  (Tr. 19, 966, 995-96, 1000, 1002).  The ALJ observed that medical records from July 2019 reflected that, although Plaintiff had a limp, ambulated without any assistive devices, and was allowed to continue weight bearing as tolerated.  (Tr. 19-20, 1050-51).  In the records cited by the ALJ, Dr. Becher stated that Plaintiff was "clinically doing excellent."  (Tr. 19-20, 1050-51).

The ALJ also cited records from November 2019 showing that, while Plaintiff complained of persistent numbness around her left hip incision and of occasional pain in her right thigh at the fracture site with activity, she used a shoe insert that helped with her left leg limp, she reported that her occasional dull, achy pain was manageable, and she continued to ambulate without assistive devices.  (Tr. 20, 1053, 1057-58).  The ALJ noted that diagnostic records reflected progressive union of the left femoral neck and right femoral shaft.  (Tr. 20, 1057-58).  The ALJ also observed that, similar to the physical examination findings in July 2019, Plaintiff's November 2019 objective findings were not particularly adverse—merely reflecting a slight abduction of the right hip during the swing phase of her gait.  (Tr. 20, 1052, 1057-59). Additionally, the ALJ noted that similar to the findings in July 2019, Plaintiff had no swelling or warmth on examination, no tenderness to palpation over the hip or leg, full range of motion of the ankle, knees and hips, full strength, and intact strength and pulses.  (Tr. 20, 1052, 1059).  The ALJ further observed that in March 2020, the records indicated that Plaintiff reported that she usually walked with a cane but that she did not use a cane at the appointment.  (Tr. 20, 1074).  The ALJ noted that while her physical examination reflected some reduced range of motion in the left hip, an antalgic gait, and moderate and maximal tenderness at the groin, it also reflected no swelling or warmth, normal strength, normal neurological and vascular examinations, and no crepitus. (Tr. 20, 1075).

The ALJ concluded that the clinical findings on physical examination did not establish that Plaintiff would be unable to function within the RFC.  (Tr. 20).  The ALJ stated that the only abnormal findings on examination were in regard to Plaintiff's gait and some reduction of motion, but otherwise the examinations reflected intact strength, normal muscle tone and sensation, as well as normal neurologic and vascular examinations.  (Tr. 20).

Upon review of the objective medical evidence, the court finds that while the treatment records showed Plaintiff as having some difficulty ambulating, substantial evidence supported the ALJ's conclusion that Plaintiff failed to prove an inability to ambulate effectively and that her impairment therefore did not meet or equal Listing 1.06.

Plaintiff argues that the ALJ's statement that "[n]o treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment" is unsupported by substantial evidence.  (Doc. 16 at p. 7, citing Tr. 18).  In support, Plaintiff cites Dr. Becher's opinion that Plaintiff's prognosis was "Fair;"[6] that she would "need assistive devices," specifically, a "cane at all times;" that her fracture caused an inability to ambulate effectively; and that there was no expected return to effective ambulation within 12 months.  (*Id.*, citing Tr. 1110-1111). Plaintiff argues that the ALJ did not identify any actual inconsistency between the "longitudinal record" and the opinion of Dr. Becher—Plaintiff's treating physician—and that the ALJ substituted the ALJ's opinion for that of Dr. Becher in finding Dr. Becher's opinion "not persuasive."  (*Id.* at p. 8, Tr. 21).

Because Plaintiff's claims were filed on April 23, 2019 (Tr. 15), review must be guided by the revised regulations applicable to claims filed on or after March 27, 2017.  *See* 82 FR 5844-01,

---

[6] Plaintiff incorrectly states in her brief that Dr. Becher stated that Plaintiff's prognosis was "poor." (Doc. 16 at p. 7; *see* Tr. 1110).

2017 WL 168819 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.  The revised regulations no longer use the phrase "treating source," but instead use "your medical source(s)."  *See* 20 C.F.R. § 404.1520c; *Nix v. Saul*, No. 4:20-CV-00790, 2021 WL 3089309, at *5 (N.D. Ala. July 22, 2021).  For claims governed by the revised regulations, the agency thus "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources."  20 C.F.R. § 404.1520c(a); *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 898 (11th Cir. 2022).  "Further, the regulations governing claims filed on or after March 27, 2017, no longer mandate particularized procedures that the adjudicator must follow in considering opinions from treating sources (*e.g.*, requirement that adjudicators must 'give good reasons' for the weight given a treating source opinion)."  *Nix*, 2021 WL 3089309, at *6 (citing 20 C.F.R. § 404.1520c(b)).  Instead, the "new regulations require an ALJ to apply the same factors when considering the opinions from *all* medical sources."  *Simon v. Kijakazi*, No. 8:20-CV-1650, 2021 WL 4237618, at *3 (M.D. Fla. Sept. 17, 2021) (emphasis in original) (citing 20 C.F.R. § 404.1520c(a)).

Stated differently, in evaluating the persuasiveness of the medical opinion(s) or prior administrative medical finding(s), "[the agency] will consider those medical opinions or prior administrative medical findings from that medical source together" using the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding."  20 C.F.R. § 404.1520c(a), (c).  "The most important factors ... [used to] evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability ... and consistency."  20 C.F.R. § 404.1520c(a), (b)(2); *Simon*, 2021 WL 4237618, at *3. Therefore, "the ALJ must explain how he or she considered the supportability and consistency

factors." *Wynn v. Kijakazi*, No. 8:20-CV-2862, 2022 WL 1115296, at *4 (M.D. Fla. Apr. 14, 2022). "The ALJ must explain in his decision how persuasive he finds a medical opinion and/or a prior administrative medical finding based on these two factors." *Nix*, 2021 WL 3089309, at *6 (citing 20 C.F.R. § 404.1520c(a)-(c)). "However, the ALJ need not use any magic words in discussing whether a medical opinion is supported by evidence from the medical source himself and whether the opinion is consistent with other evidence of record." *Thaxton v. Kijakazi*, No. 1:20-CV-00616, 2022 WL 983156, at *8 (M.D. Ala. Mar. 30, 2022); *Williamson v. Kijakazi*, No. 2:20-CV-772, 2022 WL 2257050, at *3 (M.D. Ala. June 23, 2022). Moreover, "'[t]he ALJ may but is not required to explain how he considered the other remaining factors.'" *Id*. at *4 (citation omitted); 20 C.F.R. § 404.1520c(b)(2). And the ALJ is "not required to articulate how [he] considered evidence from nonmedical sources." 20 C.F.R. § 404.1520c(d). Further, "[t]he ALJ is under no obligation to 'bridge' every piece of evidence he finds inconsistent with a specific opinion. ... Nothing requires the ALJ to discuss every piece of evidence so long as the decision does not broadly reject evidence in a way that prevents meaningful judicial review." *Gogel v. Comm'r of Soc. Sec.*, No. 2:20-CV-366, 2021 WL 4261218, at *9 (M.D. Fla. Sept. 20, 2021) (citations omitted).

In evaluating Dr. Becher's opinion, the ALJ stated:

As for the opinion evidence, the undersigned considered the physical impairment questionnaire of Dr. Stephen Becher, and did not find it persuasive (Exhibit 11F). Dr. Becher indicated that claimant has not returned to effective ambulation, and that she requires a cane or assistive device to stand or walk. He further indicated claimant would miss four or more days a month, and that her pain or other symptoms would interfere with her attention and concentration frequently. Dr. Becher's assessment is not consistent with, nor supported by the longitudinal record. Specifically, while claimant walks with a limp, and as of March of 2020 indicates she uses a cane to ambulate, her physical examinations are not particularly adverse for the reasons discussed above. Moreover, while her diagnostic testing reflects some nonunion is possible; the record does not reflect that claimant's weight bearing abilities have changed, or that she complained of any significant

13

difficulties with her concentration and attention. For these reasons, the opinion of Dr. Becher is not persuasive.

(Tr. 21).

Here, the evidence reflects that the ALJ considered the entire medical record in evaluating Dr. Becher's opinion.  As stated above, the ALJ thoroughly discussed the treatment records.  The treatment records indicated that Plaintiff made "excellent progression" with physical therapy with regard to range of motion and mobility, and that she was released to full-weightbearing two months after surgery.  (Tr. 19, 21, 1000-1002).  In July 2019, Dr. Becher stated that Plaintiff was "clinically doing excellent."  (Tr. 19-20, 1050-51).  On physical examination, Plaintiff had full motor strength, range of motion was full and symmetric bilaterally, and Plaintiff only slightly abducted the right hip during the swing phase of her gait.  (Tr. 20, 1052).  In November 2019, Dr. Becher noted progressive union of both fractures on x-ray and that Plaintiff reported her "occasional dull, achy pain" as manageable.  (Tr. 20, 1057).  Additionally, Plaintiff reported improvement in her gait with a shoe insert.  (Tr. 20, 1057).  Plaintiff's physical examination findings were similar with the July 2019 examination findings.  (Tr. 20, 1052, 1059).  No physical examination demonstrated Plaintiff's use of a cane or assistive device.  (Tr. 20, 1050, 1057-58, 1074).  While Plaintiff reported that she generally used a cane in March 2020, she did not use an assistive device during testing. (Tr. 20, 1074).  The ALJ noted that while her physical examination reflected some reduced range of motion in the left hip, Plaintiff still had normal strength and no crepitus.  (Tr. 20, 1075). Dr. Becher did not indicate that Plaintiff was unable to participate in testing, and he reported that she was stable during testing.  (Tr. 20, 1075).  Thus, the record reflects that the ALJ adequately considered the medical evidence in determining the supportability and consistency of Dr. Becher's opinion under 20 C.F.R. § 404.1520c and that the ALJ's finding of Dr. Becher's opinion as "not persuasive" was supported by substantial evidence.

Lastly, Plaintiff argues that she produced evidence that she cannot ambulate effectively and that the ALJ failed to consider any examples provided by her of ineffective ambulation. (Doc. 16 at p. 10).  An ALJ is not required to make detailed findings or explicitly discuss why a plaintiff did not actually meet a listing as long as substantial evidence supports the ALJ's conclusion that the plaintiff's impairment did not meet a listing.  *See Bailey v. Soc. Sec. Admin., Comm'r*, 782 F. App'x 838, 841-42 (11th Cir. 2019) ("While the Listings in 'Appendix 1 must be considered in making a disability determination, it is not required that the Secretary mechanically recite the evidence leading to her determination.'") (quoting *Hutchison*, 787 F.2d at 1463); *Robinson v. Kijakazi*, No. CV 20-00424, 2022 WL 944628, at *8 (S.D. Ala. Mar. 29, 2022) ("To the extent Plaintiff argues that the ALJ was required to provide a more fulsome analysis as to whether she meets or equals Listing 1.02, her claim is without merit.  An ALJ is not required to 'mechanically recite the evidence leading to' his step three determination, and an ALJ's determination that a claimant's impairments do not meet listing criteria may be implied from the ALJ's decision. ... Although the ALJ did not explain the specific reasoning underlying this determination, he cited evidence elsewhere in his decision to support his conclusion that Plaintiff does not meet or equal Listing 1.02.") (citations and footnote omitted).

In concluding that Plaintiff did not meet part B of 1.06, the ALJ thoroughly discussed the medical record and in doing so implicitly found that Plaintiff did not have an impairment(s) that prevented her from ambulating effectively as described in Listing 1.00B2b(2).  The ALJ properly considered Plaintiff's subjective statements in evaluating the evidence and found them not entirely consistent with the medical evidence and other evidence in the record.  The ALJ stated:

> At the hearing, the claimant testified that her leg and hip pain is so bad that she sometimes cannot get out of bed. She testified that she needs a cane for both standing and walking. She testified that she has difficulties standing for more than 30 minutes without a break. She testified that she cannot walk a city block without

her cane. She testified that she sometimes experiences swelling in her legs and that
she will elevate her legs to reduce the swelling and pain.

(Tr. 19).

In determining whether a claimant is disabled, the claimant's symptoms, including pain,
are considered to the extent that they are reasonably consistent with objective medical evidence
and other evidence. 20 C.F.R. § 404.1529(a). The Commissioner will consider a claimant's
statements about his or her symptoms and any description that claimant's medical sources or
nonmedical sources may provide about how the symptoms affect the claimant's activities of daily
living and ability to work. *Id*. However, a claimant's statements about pain or symptoms alone
are not enough to establish the existence of a physical or mental impairment or disability. *Id*.;
SSR 16-3p, 2017 WL 5180304, at *2 (S.S.A. Oct. 25, 2017); *Turner v. Kijakazi*, No. 1:19-CV-
774, 2021 WL 3276596, at *9 (M.D. Ala. July 30, 2021) ("[A]n ALJ is not required to accept a
claimant's subjective allegations of pain or symptoms."). The regulations set out a two-step
process for the evaluation of subjective complaints. *Id*.; SSR 16-3p, 2017 WL 5180304, at *3.
To establish a disability based on testimony of symptoms, the claimant must provide evidence of
an underlying medical condition and either (1) objective medical evidence confirming the severity
of the alleged symptoms, or (2) evidence establishing that the objectively determined medical
condition could be reasonably expected to give rise to the alleged symptoms. *Carroll v. Soc. Sec.
Admin., Comm'r*, No. 6:21-CV-00014, 2022 WL 3718503, at *12 (N.D. Ala. Aug. 29, 2022)
(citing *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002)); 20 C.F.R. §§ 404.1529(a)-(b),
416.929(a)-(b); SSR 16-3p, 2017 WL 5180304, at *3.

"Consideration of a claimant's symptoms therefore involves a two-step process, wherein
the SSA first considers whether an underlying medically determinable physical or mental
impairment exists that could reasonably be expected to produce the claimant's symptoms, such as

pain." *Mixon v. Kijakazi*, No. 8:20-CV-2991, 2022 WL 2816964, at *3 (M.D. Fla. July 19, 2022);
20 C.F.R. §§ 404.1529(a)-(b), 416.929(a)-(b); SSR 16-3p, 2017 WL 5180304, at *2-3.  Once an
underlying physical or mental impairment that could reasonably be expected to produce the
claimant's symptoms is established, the ALJ must then consider all of the evidence in the record
to evaluate the intensity and persistence of those symptoms to determine the extent to which the
symptoms limit the claimant's capacity for work.  SSR 16-3p, 2017 WL 5180304, at *3-4;
20 C.F.R. §§ 404.1529(a)-(c), 416.929(a)-(c); *Stromgren v. Kijakazi*, No. 3:21-CV-908, 2022 WL
1205347, at *5 (N.D. Fla. Mar. 11, 2022), *report and recommendation adopted*, No. 3:21-CV-908,
2022 WL 1204519 (N.D. Fla. Apr. 22, 2022).  In doing so, SSR 16-3p and the regulations require
an ALJ to consider certain factors, including: (1) daily activities; (2) location, duration, frequency,
and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type,
dosage, effectiveness, and side effects of any medication taken; (5) treatment, other than
medication, to relieve pain or other symptoms; (6) any measures used to relieve pain or other
symptoms; and (7) any other factors concerning functional limitations and restrictions due to pain
or other symptoms. SSR 16-3p, 2017 WL 5180304, at *8-9; 20 C.F.R. § 404.1529(c)(3).

The ALJ will also consider whether there are any inconsistencies in the evidence and the
extent to which there are any conflicts between claimant's statements and the rest of the evidence,
including the history, signs and laboratory findings, and statements by treating and non-treating
sources or other persons about how the symptoms affect the claimant.  20 C.F.R. § 404.1529(c)(4).
"However, Eleventh Circuit case law does not require an ALJ to enumerate every factor in every
decision."  *Alexander v. Comm'r of Soc. Sec. Admin.*, No. 6:20-CV-01862, 2022 WL 4291335, at
*5 (N.D. Ala. Sept. 16, 2022) (citing *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)
(concluding that the ALJ need not cite to "particular phrases or formulations," but must provide

reasons that would enable a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole.  If the ALJ discredits a claimant's subjective statements, the ALJ "must articulate explicit and adequate reasons for doing so." *Foote*, 67 F.3d at 1561-62; *Patterson v. Kijakazi*, No. 8:21-CV-359, 2022 WL 3028058, at *3 (M.D. Fla. Aug. 1, 2022).  That is, "[w]here proof of a disability is based upon subjective evidence and a credibility determination is a critical factor in the decision, if the ALJ discredits the claimant's testimony as to his subjective symptoms, the ALJ must either explicitly discredit such testimony or the implication from the ALJ's opinion must be so clear as to amount to a specific credibility finding." *Martinez v. Comm'r of Soc. Sec.*, No. 21-12116, 2022 WL 1531582, at *2 (11th Cir. May 16, 2022) (citing *Foote*, 67 F.3d at 1562).  "Subjective complaint credibility is the province of the ALJ." *Williams v. Kijakazi*, No. 2:20-CV-277, 2022 WL 736260, at *2 (M.D. Ala. Mar. 10, 2022) (citing *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014)).

As previously addressed, the ALJ thoroughly discussed the medical record.  The record showed that Plaintiff made excellent progression with physical therapy as to range of motion and mobility and pain, and she was released to full-weightbearing two months after surgery.  (Tr. 19-21, 995-96, 1000, 1002, 1051, 1057).  Plaintiff reported improvement in her limp with a heel lift, and no physical examination demonstrated Plaintiff's use of an assistive device or cane.  (Tr. 20, 1050, 1057-58, 1074).  Although Plaintiff reported in March 2020 that she generally used a cane, she did not use an assistive device or cane during testing.  (Tr. 20, 1074).  While Plaintiff walked with an antalgic gait, Dr. Becher did not indicate her inability to participate in testing, and he reported that she was stable during testing.  (Tr. 20, 1076).  The objective medical record did not totally support Plaintiff's subjective statements.  Thus, substantial evidence supported the ALJ's conclusion that Plaintiff failed to meet her burden of establishing an inability to ambulate

effectively.

**B.      Evaluating Plaintiff's Subjective Statements**

Plaintiff asserts that the ALJ improperly evaluated her subjective statements by failing to

articulate explicit and adequate reasons for rejecting her testimony and her need to elevate her legs.

(Doc. 16 at pp. 11-13).  Plaintiff takes issue with the ALJ's following statements:

> In addition to the above medical evidence of record, the undersigned considered
> non-medical evidence including the claimant's testimony at the hearing in
> determining the claimant's residual functional capacity. The claimant testified she
> could stand for 30 minutes, and that she could sit for up to two hours at one time.
> While the undersigned accommodated these limitations, the record does not support
> greater limitations, including the need to elevate her legs or the need to utilize a
> cane other than for ambulation.
> . . .
> In sum, after considering the record as a whole, including the objective diagnostic
> tests and clinical findings on physical examinations, the claimant's longitudinal
> treatment history, and her documented activities of daily living, the undersigned
> finds that the claimant is capable of performing a range of sedentary unskilled work
> within the above parameters.

(Tr. 20, 21).

As previously stated, the ALJ thoroughly discussed the medical record in assessing

Plaintiff's alleged impairments.  The treatment records reflected Plaintiff's improvement and that

no physical examination demonstrated Plaintiff's use of an assistive device or cane.  Plaintiff did

not present any objective medical evidence showing a need for her legs to be elevated.  Plaintiff's

March 2020 examination showed some reduced range of motion in the left hip, an antalgic gait,

and moderate and maximal tenderness at the groin, but it also showed no swelling or warmth,

normal strength, normal neurological and vascular examinations, and no crepitus.  (Tr. 20, 1075).

A review of the ALJ's decision reflects that the ALJ considered the record as a whole in

determining that Plaintiff's alleged symptoms were "not entirely consistent with the medical

evidence and other evidence in the record for the reasons explained in [the] decision."  (Tr. 19).

Further, Plaintiff testified that she could "sit for mostly two hours," but that she might "have to take a 30-minute break or get up to elevate [her] legs." (Tr. 47). The ALJ provided in the RFC a requirement that Plaintiff "must be given the opportunity to stand up to 30 minutes, after sitting for 2 hours continuously." (Tr. 18). Thus, the RFC seemingly allows Plaintiff the ability to elevate her leg in conformity with her testimony.

"[A]n ALJ is not required to accept a claimant's subjective allegations of pain or symptoms." *Turner*, 2021 WL 3276596, at *9; 20 C.F.R. § 404.1529(a) ("[S]tatements about [a claimant's] pain or other symptoms will not alone establish that [a claimant is] disabled."). As explained above, the court finds that the ALJ properly evaluated Plaintiff's subjective complaints in light of the evidence of record and formulated appropriate RFC restrictions to accommodate the limitations arising from her impairments. Credibility determinations are the province of the ALJ, *Mitchell*, 771 F.3d at 782, and the ALJ sufficiently cited evidence in the record for finding that Plaintiff's statements were not entirely consistent with the record as a whole. *See Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) (footnote omitted) (The appropriate question for a reviewing court "is not ... whether [the] ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it.").

The court concludes that the ALJ's decision sufficiently articulated the ALJ's reasons for discounting Plaintiff's subjective statements, based on the medical and other evidence of record, as thoroughly discussed by the ALJ. Accordingly, the reasons articulated by the ALJ for partially discrediting Plaintiff's subjective statements are supported by substantial evidence.

## V.     Conclusion

After carefully and independently reviewing the record, and for the reasons stated above, the court concludes that the Commissioner's decision is due to be **AFFIRMED**.   A separate judgment will issue.

**DONE** this the 29th day of March 2023.

_____
**CHAD W. BRYAN**
**UNITED STATES MAGISTRATE JUDGE**